United States District Court
Southern District of Texas
**ENTERED**
December 02, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIDENCIO ESPINOZA ANDRES, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-25-5128 |
| | § | |
| KRISTI NOEM, *et al.*, | § | |
| | § | |
| *Respondents*. | § | |

## MEMORANDUM OPINION AND ORDER

Through counsel, noncitizen Fidencio Espinoza-Andres filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking his immediate release from immigration detention. (Dkt. 1). The Court ordered an expedited answer from the respondents. (Dkt. 7). The respondents answered with a motion for summary judgment. (Dkt. 14). Espinoza filed a response to the motion. (Dkt. 18). Having reviewed the petition, the motion and response, the pleadings, and the law, the Court denies the respondents' motion for summary judgment, grants Espinoza's petition in part, and orders the respondents to hold a bond hearing within seven (7) days from the date of this Order or release Espinoza.

## I.    BACKGROUND

The parties do not dispute the basic facts of this case. Espinoza is a Mexican national who entered the United States without inspection in 1999. (Dkt. 1, p. 2).

He had no contact with immigration officials until October 2025, when he was arrested and served with a Notice to Appear. (*Id.* at 13). He was charged with inadmissibility, and he has been detained since then while removal proceedings continue. (*Id.*).

In his petition, Espinoza contends that his detention should be governed by the discretionary detention provisions of 8 U.S.C. § 1226 rather than the mandatory detention provisions of 8 U.S.C. § 1225. (*Id.* at 6-13). He contends that both the plain language of the statutes and longstanding precedent hold that § 1225 governs only noncitizens who are detained when they cross the border, while § 1226 governs noncitizens who are apprehended while already present in the country. (*Id.*). He argues that while the Department of Homeland Security has recently changed its interpretation of the two statutes, the new interpretation conflicts with both the plain language of the statutes and Congressional intent. (*Id.*). He asks the Court to find that the new interpretation of the statutes violates federal law and the Constitution, order that his removal proceedings be converted to ones under § 1226, and order that he either be immediately released or given a bond hearing within seven days. (*Id.* at 14-16).

The respondents answered the petition and moved for summary judgment. (Dkt. 14). The respondents contend that because Espinoza entered the United States without inspection, he is subject to mandatory detention under § 1225(b)(2). (*Id.* at

2, 7-14). They contend that this result is supported by the plain language of the applicable statutes, the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 221-27 (BIA 2025), and persuasive decisions from other district courts. (*Id.* at 7-14). Espinoza filed a timely response to the motion. (Dkt. 18).

## II.    DISCUSSION

This case is one of a flood of lawsuits filed across the country in the last several months challenging the federal government's authority to require mandatory detention for certain noncitizens while their removal proceedings are in progress. At issue in these cases is the proper interpretation and application of § 1225(b) and § 1226(a). Espinoza contends that the plain language of the statutes and longstanding precedent show that he falls within the discretionary detention provision of § 1226(a). The respondents contend that the plain language of the statutes shows that Espinoza is subject to mandatory detention under § 1225(b).

Section 1225, entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," provides,

> Subject to subparagraphs (B) and (C), in the case of *alien who is an applicant for admission*, if the examining immigration officer determines that an *alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [8 U.S.C. § 1229a].

8 U.S.C. § 1225(b)(2) (emphasis added).

In contrast, § 1226, entitled "Apprehension and detention of aliens," provides,

in pertinent part:

> On a warrant issued by the Attorney General, an alien may be arrested
> and detained pending a decision on whether the alien is to be removed
> from the United States.  Except as provided in subsection (c) and
> pending such decision, the Attorney General—
>
> (1)    may continue to detain the arrested alien; and
>
> (2)    may release the alien on –
>
> (A)    bond of at least $1,500 with security approved by,
> and containing conditions prescribed by, the Attorney General; or
>
> (B)    conditional parole; but
>
> (3)    may not provide the alien with work authorization
> (including an "employment authorized" endorsement or other
> appropriate work permit) unless the alien is lawfully admitted for
> permanent resident or otherwise would (without regard to removal
> proceedings) be provided such authorization.

8 U.S.C. § 1226(a).

For decades, the Department of Homeland Security has applied § 1226, rather

than § 1225, to noncitizens who are apprehended while already present in the United

States without having been admitted or paroled.  *See, e.g., Savane v. Francis*, No.

1:25-cv-6666-GHW, 2025 WL 2774452, at *5 (S.D.N.Y. Sept. 28, 2025) (citation

omitted).  The Department's own regulations concerning asylum procedures adopt

this interpretation of § 1225 and § 1226.  *See* Inspection & Expedited Removal of

Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings;

Asylum Procedures, 62 Fed. Reg. 10312, 10323 (proposed Mar. 6, 1997) ("Despite

being applicants for admission, aliens who are present without having been admitted

or paroled (formerly referred to as aliens who entered without inspection) will be

4/11

eligible for bond and bond redetermination."). Likewise, the Supreme Court has stated that the government is authorized to detain "aliens seeking admission into the country" under §§ 1225(b) while detaining "aliens already in the country" under § 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018). Under this longstanding precedent, Espinoza would be subject to discretionary detention under § 1226(a) and so would be entitled to a bond hearing.

However, the respondents have recently "revisited [their] legal position on detention and release authorities" under § 1225 and § 1226. *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, available at https://perma.cc/4Q6X-GAZC (last visited Dec. 1, 2025). This Interim Guidance states that the Department of Homeland Security has now "determined that [§ 1225] of the [INA], rather than [§ 1226], is the applicable immigration detention authority for all applicants for admission." *Id.* The Interim Guidance goes on to explain this newly adopted position:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. **Effective immediately, it the position of DHS that such aliens are subject to detention under [§ 1225(b)(2)(A)] and may not be released from ICE custody except by [§ 1182] parole. . . .** For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under [§ 1226(a)] during removal proceedings are aliens admitted to the United States . . . with the exception of those subject to mandatory detention under [§ 1226(c)].**

*Id.* (emphasis in original).

Espinoza contends that because he entered the United States without authorization, was not inspected or detained when he arrived, and was apprehended miles from the border more than twenty-five years after he arrived, he is neither an "arriving alien" nor is he "seeking admission," and so he is not subject to § 1225.  In contrast, the respondents contend that Espinoza falls squarely within § 1225  (Dkt. 14, p. 8).  The respondents assert that "[r]ead properly, a person 'seeking admission' is just another way of describing a person applying for admission, meaning he is an applicant for admission, which includes both those individuals arriving in the United States and those already present without admission." (*Id.* at 8-9).  Recognizing the different phrases used in § 1225, the respondents nevertheless contend that the terms "applicant for admission" and "seeking admission" are "plainly synonymous" and plainly apply to Espinoza.  The Court disagrees for several reasons.

First, a basic canon of statutory construction is that "differences in language . . . convey differences in meaning." *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698 (2022) (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017)); *see also Padron Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950097, at *4 (S.D. Tex. Oct. 8, 2025) ("[w]hen two different phrases are used in a statute, a variation in terms suggests a variation in meaning" (citing A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012))).    The

respondents' argument that the Court should treat the different phrases within the statute as synonymous contradicts this maxim.

Second, well-established principles of statutory construction require courts to give meaning to each phrase in a statute rather than construing it in a way that renders parts of it superfluous. *See, e.g., TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant") (cleaned up); *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("every clause and word of a statute should have meaning") (cleaned up). But the respondents' interpretation of § 1225(b) would make certain portions of it superfluous. As one court has recently explained:

> If, as Respondents argue, § 1225(b)(2)(A) were intended to apply to all "applicant[s] for admission," there would be no need to include the phrase "seeking admission" in the statute. That is, rather than stating that mandatory detention is required for any "applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted," § 1225(b)(2)(A) (emphasis added), the statute would instead provide for mandatory detention for any "applicant for admission, if the examining immigration officer determines that [the] alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted."

*Lopez Benitez v. Francis*, No. 25-CIV-5937(DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025) (emphasis and strike-through in original). The respondents' proffered reading of the statute requires the Court to violate this well-

established principle.

Third, courts may consider the titles of statutes when interpreting their provisions. *See, e.g., Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("[S]tatutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute." (quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002))); *see also United States v. Moore*, 71 F.4th 392, 397 (5th Cir. 2023). Here, the title of § 1225 states that it applies to the "expedited removal of inadmissible arriving aliens." In contrast, the title of §1226 states that it applies to the "apprehension" of noncitizens who are already present in the country. These titles contradict the respondents' current argument that § 1225 applies to noncitizens who have been present in the country for years and instead support the government's longstanding interpretation that § 1225 applies to noncitizens intercepted at the border while § 1226 applies to noncitizens apprehended away from the border years after they entered.

Based on these three principles of statutory construction, the Court is not persuaded by the respondents' argument that their current interpretation of the statutes is guided by their plain language. The respondents are not entitled to summary judgment in their favor on the basis of the plain language of the statutes.

In the alternative, the respondents contend that this Court should defer to the BIA's recent decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025),

but the Court need not do so. The Administrative Procedures Act "specifies that courts, not agencies, will decide '*all* relevant questions of laws' arising on review of agency action . . . and set aside any such action inconsistent with the law as they interpret it." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (quoting 5 U.S.C. § 706) (emphasis in original). The Court finds that *Hurtado*'s interpretation of § 1225 and § 1226 is inconsistent with the language of the statutes themselves, as well as with the Department of Homeland Security's own longstanding interpretation and application of those statutes.[1] Because the *Hurtado* decision utterly ignores the Department's U-turn on the proper interpretation and application of § 1225 and § 1226, the Court finds that decision to be unpersuasive.

Finally, the respondents argue that the Court should consider "persuasive decisions from other district courts." (Dkt. 14, p. 13). However, the respondents recognize that district courts are divided on the issue. (*Id.* at 13-14). The

---

[1]The Department issued its Interim Guidance setting forth its new interpretation of § 1225 without providing a notice-and-comment period that would in most cases be required by 5 U.S.C. § 553(b) for agency rulemaking. Nevertheless, the Court recognizes that "interpretive rules," which are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers" are not subject to the notice-and-comment requirement. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96-97 (2015). Such interpretive rules may also be amended without providing a notice-and-comment period under § 553(b). *Id.* at 102. The respondents do not address whether their new interpretation of § 1225 constitutes only an interpretive rule. But assuming that to be the case, the convenience of avoiding the notice-and-comment requirement "comes as a price: Interpretive rules 'do not have the force and effect of law and are not accorded that weight in the adjudicatory process.'" *Id.* at 97 (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995)). The Court is therefore not bound by the Department's new "interpretive rule," assuming it qualifies as such.

respondents argue that the Court should be guided by the decisions that have found in its favor. (*Id.* at 14).

This Court has conducted its own independent analysis of the statutes at issue, the authorities cited by both parties, the legislative history, the longstanding practice and interpretation of the Department, and the decisions of other district courts from around the country that have decided the issue in favor of either the petitioner or respondent. Based on this analysis and the principles set out above, the Court finds that the question of whether Espinoza's detention should be continued is governed by § 1226 rather than § 1225. Espinoza is not an "arriving alien"; he arrived in this country more than twenty-five years ago. He therefore does not fall under the plain language of § 1225. Instead, he was apprehended while present in the country, and he is being detained pending a decision on whether he is to be removed. As such, he falls under § 1226.

However, under § 1226, Espinoza is not entitled to immediate release; instead, under these circumstances, "[m]any courts have . . . found it appropriate to give the Government a short window in which to complete the bond hearing, or else release the petitioner." *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337, 2025 WL 2691828, at *13 (W.D. Tex. Sept. 22, 2025) (citing *Valasquez Salazar v. Dedos*, No. 1:25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (collecting cases)). At that hearing, the respondents will have the burden to show by clear and convincing

10/11

evidence that Espinoza either presents a danger to the community or is a flight risk.

## III.    CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1.    The respondents' motion for summary judgment, (Dkt. 14), is **DENIED**.

2.    Espinoza's petition for writ of habeas corpus, (Dkt. 1), is **GRANTED in part**.

3.    The respondents are **ORDERED** to provide Espinoza with an individualized bond hearing under 8 U.S.C. § 1226(a) within **seven (7) days** of the date of this Order or else immediately release him from custody.

4.    Until the bond hearing is held, the respondents are **PROHIBITED** from transferring Espinoza outside of the Southern District of Texas.

**The Clerk of Court will provide a copy of this Order to the parties.**

SIGNED at Houston, Texas on _____, 2025.


_____
DAVID HITTNER
UNITED STATES DISTRICT JUDGE